# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL D. KIRBY, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-17-3384 |
| WARDEN, *et al*. | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Plaintiff Michael D. Kirby filed suit against defendants, alleging that while he was an inmate at Western Correctional Institution (WCI), they failed to provide adequate medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants Wexford Health Sources, Inc., Peggy Mahler, N.P., Dana Hensel, R.N., Michael Klepitch, R.N., and Tara Cottrell, L.P.N. (collectively the Medical Defendants), along with Warden Richard J. Graham, Jr., Corrections Officers Barry L. Townsend, Harry Carr, Michael W. Rounds, Edward C. Burkey, Jr., and II Keith A. Rice, Correctional Case Management Specialist Jason Clise, and Correctional Case Management Supervisor Cory Walker (collectively the Correctional Defendants), filed Motions to Dismiss or in the alternative for Summary Judgment. ECF Nos. 22, 30. Kirby opposes the motions. ECF Nos. 29, 32. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018.). For the reasons that follow, Defendants' motions, construed as ones for summary judgment, are GRANTED.

I.  **The Claims**

On November 13, 2017, the Court received correspondence from Kirby, which, liberally

1

read, asserted a civil rights claim pursuant to 42 U.S.C. § 1983, alleging that he had been denied constitutionally adequate medical care. ECF No. 1. The Court required Kirby to supplement his filing. ECF No. 2. In response, Kirby detailed his claims and named the individual Defendants that are the subject of this action. ECF No. 3.

Kirby's initial correspondence and supplement, collectively construed as the Complaint, alleges that in September and October 2017, Defendants knew Kirby was suffering a medical emergency arising from the onset of type II diabetes and failed to take sufficient action to insure that he received proper medical attention. ECF No. 3, pp. 4, 6, 7; ECF No. 3-1. Relatedly, the Complaint alleges that the Medical defendants misdiagnosed him, ignored his symptoms and lacked adequate training and proper medical equipment to address his medical needs. ECF No. 3 at 5-7. The Complaint further alleges that Correctional Defendants used the administrative grievance process to confuse and delay his grievances and to "cover the Department's back side." ECF No. 3-1.[1]

## II.     Standard of Review

Defendants move for summary judgment on all claims. Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material

---

[1] In his responsive pleadings, Kirby impermissibly attempts to expand his claims. ECF Nos. 29 and 32. He contends, for the first time, that Defendants tampered with his mail, did not provide him finger sticks, ran out of insulin, threw out sick call slips, and delayed his endoscopy and colonoscopy. Kirby also attempts to add Defendants from Northern Branch Correctional Institution (NBCI), where he is currently confined, because "issues are continuing and have carried over from WCI to NBCI." ECF No. 29-1, p. 2. At this stage in the proceedings, the Court will not permit amendment to the Complaint, nor is amendment appropriate through responsive pleadings. *See Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998); *see also Mylan Laboratories, Inc. v. Akzo*, N. V.,770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993). The Court, therefore, confines its analysis to the Complaint allegations. ECF No. 1. Should Kirby wish to file a separate complaint, he is free to do so.

fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom., Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where formal discovery has not taken place, the non-movant may file an affidavit with the Court setting out what discovery he needs to challenge adequately a summary judgment motion. See Fed. R. Civ. P. 56(d). "The Fourth Circuit places 'great weight' on the affidavit requirement." *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 683 (D. Md. 2013) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." *Id. (quoting* 10B Wright, Miller

& Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Defendants have submitted a voluminous record in connection with their motions.[2] Kirby was therefore on notice that the Court may treat the motions as ones for summary judgment. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). In response, Kirby requests discovery to obtain the video of his cell from September 30 to October 1, 2017. ECF No. 2-1, p. 1. Kirby seeks to establish through this video that he may have laid on the floor for 24 hours or more before being sent to the hospital. *Id.* However, Kirby relies on the mistaken assumption that the month of September has 31 days, which it does not. Further, the authenticated medical records and affidavits establish the timeline for Kirby's treatment on September 30 through October 1, and thus, the Court cannot conceive of how this video would be material to defeating the Defendants' motion.

Kirby also requests all sick call traffic notices from September 1 through September 30, 2017, for the entire WCI population, as well as the medical entrance and infirmary log books from September 30 to October 1, 2017. ECF No. 29-1, p. 2. Clearly such requests are overbroad and not relevant to the claims raised. Kirby's remaining requests, equally varied and far flung, bear little obvious relationship to this matter; nor does Kirby explain why any of the requested discovery are material to defeating summary judgment. Given the robust record before the Court, Kirby has failed to proffer any legitimate need for additional discovery. The Court

---

[2] The record includes Kirby's verified medical record (ECF No. 22-15; ECF No. 30-4), declarations of Dr. Getachew (ECF No. 30-5), Diane Hensel, R.N. (ECF No. 30-5), Michael Yates, Correctional Case Management Supervisor (ECF No. 22-3); Correctional Case Management Specialists Jason Clise (ECF No. 22-4) and Cory Walker (ECF No. 22-5); Correctional Officers Keith Rice (ECF No. 22-6), Harry Carr (ECF No. 22-7), and Barry Townsend (ECF No. 22-8); Samiyah Hassan, Administrative Officer (ECF No. 22-16) and Warden Richard J. Graham, Jr., (ECF No. 22-17), as well as the WCI post assignment sheet for October 1, 2017 (ECF No. 22-9); WCI Housing Unit 5 log for October 1, 2017 (ECF No. 22-10), WCI daily significant event forms from October 1, 2017 (ECF No. 22-11); Kirby's traffic history (ECF No. 22-12); Kirby's ARP index (ECF No. 22-14); and the full case record for Kirby's administrative grievance. WCI 2703-17 (ECF No. 22-14).

proceeds accordingly.

**III.   The Record Evidence**

The Court construes the record evidence in the light most favorably to Kirby.

In early 2017, Kirby showed no signs of diabetes. Kirby was seen regularly in the WCI chronic care clinic from March of 2017 through June 12, 2017 for hypertension, esophageal reflux, and hypothyroidism. ECF No. 30-4, pp. 13, 23, 30. From March through September 19, 2017, Kirby regularly submitted sick call slips for medication refills. *Id*., pp. 17, 20, 22, 32-36. During this time, he also submitted two sick call slips regarding gastrointestinal complaints. *Id*., pp. 21, 29. None of the records, however, reflected that Kirby had any signs or symptoms associated with diabetes.

Kirby's blood work from May 1, 2017, showed a high blood urea nitrogen "BUN" value, which is indicative of kidney dysfunction. ECF 30-4, p. 18. His TSH-sensitivity was also high, which is indicative of hypothyroidism. ECF 30-4, p. 18. Blood work roughly one month later, on June 5, 2017, showed high glucose and TSH sensitivity levels as well as borderline high cholesterol. ECF No. 30-4, p. 26. Kirby's urine was negative for protein, glucose or ketones. ECF No. 30-4, p. 27.

On September 6, 2017, Kirby was evaluated by Nurse Practitioner Mahler for a routine scheduled chronic care visit. ECF No. 22-15, p. 4; ECF No. 30-4, p. 37. Kirby maintains that he complained of dry-mouth and frequent urination, although the medical records do not reflect that Kirby voiced these complaints to Mahler. *Id*. At the time of this appointment, Kirby was diagnosed as suffering from hypertension, lymphadenopathy, esophageal reflux, and hyperlipidemia. *Id*. Nurse Mahler attests that chronic care visits are typically confined to discussing an inmates' current medical needs. *Id*.

Three weeks later, on September 21, 2017, Kirby attended an administrative team

5

review.³ Defendants Clise and Walker attended the meeting. They describe Kirby as coherent and answering the questions asked of him. He did not appear to either of them to be suffering from any medical issues, nor did he discuss any medical concerns. ECF No. 22-4, ¶¶ 3, 4; ECF No. 22-5, ¶ 3.

On September 28, 2017, Kirby submitted a sick call slip complaining that since January he had been bleeding internally and that his feces looked like coffee grounds. ECF No. 22-15, p. 7; ECF No. 30-4, p. 40. He also complained of low energy and a dry mouth, chest pains, and lower abdominal and right arm pain. This sick call slip was not reviewed until October 10, 2017. ECF No. 30-4, p. 41.

However, on September 30, 2017, Kirby was given an electrocardiogram (EKG) which was abnormal. Medical notes reflect the test results showed "[s]inus tachycardia with frequent and consecutive premature ventricular complexes and [f]usion complexes. Right atrial enlargement. Possible right ventricular hypertrophy. Nonspecific SI and T wave abnormality." ECF No. 22-15, p. 8. That same day, Kirby was placed on bed rest for ten days or until he could be seen by a provider in light of his "serious health condition." *Id.*, p. 9; ECF No. 30-4, p. 41. Although Kirby asserts otherwise, the medical order notes "+ glucose ketones" suggesting that Kirby's urine was tested for the presence of glucose. *Id.*

On October 1, 2017,⁴ at approximately 1:45 a.m., Kirby was taken to the medical unit to address his shortness of breath. ECF No. 22-10, p. 1; ECF No. 22-15, p. 13; ECF No. 30-4, p. 42. The record from this visit reflects that Kirby's vital signs were stable and his oxygen saturation 99%, but his breathing was shallow. He was given water and his breathing eased.

---

³ Kirby contends that this administrative review occurred on September 30, 2017. ECF No. 29, p. 2.
⁴ Kirby contends that Defendants have made up this date to undermine his claims and that he was taken to medical on September 31, 2017. ECF No. 29, p. 3. However, as September has only 30 days, the Court cannot credit Kirby's representations.

ECF No. 30-6, ¶ 5. Arrangements were made for Kirby to see a medical provider in the morning, and because he appeared stable, he was returned to his housing unit via wheelchair. ECF No. 22-15, p. 13; ECF No. 30-4, p. 42.

Around 5:00 a.m. that same day, the housing unit again called medical because of Kirby's continued shortness of breath. Nurse Hensel reported to the housing unit to examine Kirby. ECF No. 22-15, p. 16; ECF No. 30-4, p. 45; ECF No. 30-6, ¶ 7. Kirby had the same symptoms as earlier. ECF No. 22-15, p. 16; ECF No. 30-4, p. 45; ECF No. 30-6, ¶ 8. Although Kirby claims he was "delusional and bouncing form sink to bed," ECF No. 29, p. 3, the medical records do not reflect any such symptoms, and Kirby concedes that he "may [not have appeared] as physically sick as [he] was." *Id.*, p. 4.

Later in the day on October 1, Corrections Officer Carr conducted one informal inmate count and several security rounds and did not notice anything amiss with Kirby. ECF No. 22-7, ¶ 3.[5] No one had notified Corrections Officer Carr of any medical issues concerning Kirby. *Id*. Approximately half way through the shift, Carr saw Kirby lying on the floor of his cell. *Id.*, ¶ 4. Carr asked Kirby why he was lying on the floor; Kirby struggled to communicate and it was obvious to Carr that Kirby needed medical attention. The medical department was immediately notified and Corrections Officer Townsend escorted Kirby to the medical department. *Id.*; ECF No. 22-8, ¶ 3. Townsend also observed that Kirby was behaving oddly and was struggling to communicate. *Id*.

When Kirby arrived at medical, Nurse Kleptich evaluated him. Kirby was pale, sweating, unable to speak, and his breathing was labored. ECF No. 22-15, p. 18; ECF No. 30-4, p. 47.

---

[5] As to the other Defendant corrections officers on duty October 1, Burkey and Rounds were assigned to Kirby's unit as the Control Officer, and Officer in Charge, respectively. ECF No. 22-9, p. 1. Kirby contends that Burkey returned him to his cell after each encounter with Hensel. ECF No. 3, p. 5. Officer Rice was on duty that day but did not make rounds and would have conducted the 11:00 p.m. count only. ECF No. 22-6, ¶ 3. Rice did not observe Kirby that day. Id., ¶ 4.

Kirby was given oxygen and an EKG. ECF No. 22-15, p. 20. Kirby's urine showed high levels of ketones, blood, glucose and protein, and he was assessed as suffering from diabetic ketoacidosis and described as a "new onset diabetic." ECF No. 22-15, p. 18; ECF No. 30-4, p. 47. Kleptich notified the on-call physician who directed that Kirby be transported to the emergency room. *Id.*

Kirby was admitted to the intensive care unit at Western Maryland Regional Medical Center. He spent four days at the hospital where he was treated and eventually discharged to the WCI infirmary. *Id.*; ECF No. 30-4, p. 49. The WCI infirmary notes reflect that Kirby was suffering from "severe diabetic ketoacidosis, GERD, unknown diabetic A1C on admission 12.2%, acute renal failure due to dehydration, electrolyte imbalance, and abnormal thyroid function test." ECF No. 25-15, p. 25. Kirby was discharged from the infirmary on the evening of October 10, 2017. ECF No. 22-15, p. 58; ECF No. 30-4, p. 59. His ketoacidosis and renal failure had fully resolved following treatment. ECF No. 30-5, ¶ 25.

On October 16, 2017, Nurse Mahler saw Kirby for a small lump on his left lower abdomen. ECF No. 22-15, p. 65; ECF No. 30-4, p. 61. Kirby was advised that the lump was likely a reaction to injections he had received during his hospitalization and would resolve on its own. During this visit, Kirby's medications were reviewed and he was told to schedule a follow up visit with chronic care clinic in one month regarding his newly diagnosed diabetes. *Id.* Laboratory results obtained October 24, 2017, revealed that Kirby had normal glucose levels and normal liver and kidney function. ECF No. 30-4, pp. 64-65; ECF No. 30-5, ¶ 26.

On November 9, 2017, Kirby requested additional education regarding diabetes. ECF No. 22-15, p. 80; ECF No. 30-4, p. 69. On November 16, 2017, based on contemporaneous lab work, a clinical pharmacist recommended full review "medication adjustment, and patient education is due at this time" as to Kirby's diabetes. ECF No. 22-15, p. 81; ECF No. 30-4, p.

70. The pharmacist recommended changes to Kirby's medications. ECF No. 22-15, p. 82; ECF No. 30-4, p. 71. The next day, Kirby was seen by Nurse Practitioner Clark in the chronic care clinic on November 17, 2017. ECF No. 22-15, p. 84; ECF No. 30-4, p. 73. His diabetic condition was described as improving and his medications adjusted. ECF No. 22-15, p. 86; ECF No. 30-4, p. 75.

IV. **Analysis**

    A. **Eighth Amendment Claim**

Kirby has sued several individuals and entities tangentially involved in his care during the months of September and October 2017, and some who were not involved at all. Although Kirby's Eighth Amendment claim fails for a variety of reasons separate and apart from its merits, the Court will not reach those deficiencies because even when construing the record most favorably to Kirby, he cannot sustain Eighth Amendment claim as to any named defendant.

The Eighth Amendment to the United States Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state a claim for constitutional denial of medical care, a plaintiff must demonstrate that defendant's acts or omissions amounted to deliberate indifference as to plaintiff's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff, aware of prisoner's need for medical attention, failed to either provide such care or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "A medical condition is shown as objectively

9

serious when it 'would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Formica v. Aylor*, 739 Fed Appx. 745 (4th Cir. 2018), *citing Gayton v. McKoy,* 593 F.3d 610, 620 (7th Cir. 2010).

As to a defendant's subjective recklessness, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695- 96; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one).

If the plaintiff demonstrates a defendant's deliberate indifference, an official may nonetheless still avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (*citing Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)).

The record evidence viewed most favorably to Kirby demonstrates that before October 1, 2017, none of Kirby's correctional medical providers knew that Kirby was diabetic. He had not previously been diagnosed with the disorder, and only had one, recent, screen for positive glucose. Although Kirby claims that he told Mahler on his September 6 that he was drinking and urinating excessively, the record belies his claim. More to the point, however, even if Kirby had disclosed as much, this arguable failure to respond to such patient reports does not rise to

the level of deliberate indifference.

Three weeks later, before Kirby passed out in his cell, he was given an EKG which was abnormal and also shown other symptoms of diabetes. However, Kirby was scheduled to be seen by a physician the following day. Although Kirby, unfortunately, experienced worsening symptoms shortly after the September 30th medical visit, he was stabilized, then examined in his housing unit where his condition remained unchanged. When Kirby was found later that evening lying in his cell having difficulty communicating, he was immediately transported to medical, diagnosed properly and taken to the hospital for further treatment.

On this record, no reasonable trier of fact could conclude that any of the Defendants were deliberately indifferent to Kirby's serious medical needs. At best, the medical Defendants, in hindsight and in a perfect world, would have responded more quickly to Kirby's illness as presented on September 30; but this alone is not evidence that Defendants knew the gravity of Kirby's illness *and* ignored it with reckless disregard for the consequences. *Johnson*, 145 F.3d at 167. Where, as here, the evidence most favorably construed to Kirby reflects no more than an isolated and episodic lapse in care, the Court cannot allow the Eighth Amendment claim to proceed. Summary Judgment is granted in the Medical Defendants' favor.

As for the Correctional Defendants, none were aware that that Kirby required medical attention until Corrections Officer Carr found Kirby lying on the floor in his cell. Officers Carr and Townsend then acted immediately to have Kirby treated. On this record, no reasonable factfinder could conclude that the provision of medical care to Kirby was so inadequate as to support an Eighth Amendment claim. *Estelle*, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care" or mere negligence in treatment is insufficient to state an Eighth Amendment claim). Summary judgment as to all Defendants on this claim must be granted.

11

### B. Allegations Concerning the Inmate Grievance Process

Kirby's generalized claims that Correctional Defendants violated their own policies in processing his administrative grievances is similarly unavailing. Allegations of state law or regulatory violations do not provide a basis for constitutional due process claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990). To the extent Kirby argues that Correctional Defendants failed to properly process his grievances, the claim also fails because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 541 (4th Cir. 2017); *see Robinson v. Wexford*, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, arguendo, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated."). Summary judgment on this claim, too, must be granted.

### C. Injunctive Relief

Kirby's request for injunctive relief is also denied. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689-90 (2008). A party seeking a preliminary injunction bears the burden of demonstrating: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and

compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

As previously discussed, Kirby has failed to demonstrate the likelihood of success on the merits and for this reason alone his request for injunctive relief fails. Moreover, Kirby has not demonstrated that he is likely to suffer irreparable harm or that the balance of equities tips in his favor. Thus, Kirby's request for injunctive relief is denied.

**V.     Conclusion**

Defendants' Motions for Summary Judgment are granted as to all claims. A separate Order follows.

    2/19/20
Date

    /S/
Paula Xinis
United States District Judge